# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                        No. CR 18-0201 JB\KK

JAVIER HECTOR PLATA
HERNANDEZ (a.k.a. Javier Plata),

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion to Revoke or Amend Order Denying Motion to Modify Conditions of Release, filed October 13, 2018 (Doc. 27)("Motion"). The Court held a hearing on October 25, 2018. The primary issue is whether the Court should release Defendant Javier Hector Plata Hernandez -- who does not have legal status in the United States of America -- to the custody of his mother, Margarita Plata, because Plata Hernandez' driving under the influence convictions do not endanger the public, and because he is not otherwise a flight risk. The Court will deny Plata Hernandez' request for release to Plata, because Plata Hernandez' illegal immigration status, driving under the influence convictions, and battery against household member convictions pose a danger to the community, the battery against household member convictions pose a danger to Plata, and Plata Hernandez' illegal immigration status makes him a flight risk, and no condition or combination of conditions would reduce these risks to acceptable levels.

## FACTUAL BACKGROUND

The Court takes its facts from the Criminal Complaint, filed January 22, 2018 (Doc. 2)("Complaint"), and the Pretrial Services Report, filed January 26, 2018 (Doc. 13). The

Court provides these facts for background. It does not adopt them as the truth, and it recognizes that these facts are largely Plaintiff United States of America's version of events.

Plata Hernandez was born in Juarez, Mexico, and moved to the United States when he was twenty-one. See Pretrial Services Report at 1. He resided in Albuquerque, New Mexico after moving to the United States. See Pretrial Services Report at 1. Plata Hernandez' former spouse, Maria Cisneros, and their two children, reside in Albuquerque, and Plata Hernandez provides $600 in monthly child support. See Pretrial Services Report at 2. Plata Hernandez does not have a United States passport, and he was removed from the United States in 2007 by the United States Immigration and Customs Enforcement ("ICE"). See Pretrial Services Report at 2. Plata Hernandez' permanent resident card, "green card," expired, and ICE "placed a Detainer on the defendant, which remains outstanding." Pretrial Services Report at 2.

Plata Hernandez was charged in 1999 with "driving while intoxicated" and "resisting/obstructing a police officer." Pretrial Services Report at 5. In 2003, Plata Hernandez was charged with the misdemeanor offense of "aggravated battery against a household member;" the victim was his then-wife, Cisneros. Pretrial Services Report at 5. See Pretrial Services Report at 5. Plata Hernandez used the named "Javier H. Plata" when arrested. Pretrial Services Report at 5. In 2006, Plata Hernandez was charged with "false imprisonment," "aggravated battery against a household member" with a deadly weapon or resulting in "great bodily harm," "bribery, intimidation, and retaliation against a witness," "aggravated assault against a household member," "driving under the influence of liquor," "negligent use of a deadly weapon," child abuse, and consumption or possession of an open container of an alcoholic beverage. Pretrial Services Report at 5-6. He gave the name "Javier Plata" when arrested for the 2006 charges. Pretrial Services

- 2 -

Report at 5. Plata Hernandez initially failed to appear to answer for the 2006 charges. See Pretrial Services Report at 5. After receiving his sentence, he was removed from the United States to Mexico. See Pretrial Services Report at 6. In 2016, Plata Hernandez was charged in New Mexico with "possession of a controlled substance" and aggravated driving under the influence. Pretrial Services Report at 6. See Pretrial Services Report at 6. When arrested, Plata Hernandez gave his name as "Cesar Gonzalo-Delgado." Pretrial Services Report at 6.

A municipal detention facility released Plata Hernandez on November 26, 2016, and the ICE Officers discovered him in New Mexico on January 19, 2018. See Complaint at 1. Plata Hernandez is charged with reentering the United States after previous removal, in violation of 18 U.S.C. § 1326. See Complaint at 1.

## PROCEDURAL BACKGROUND

On August 24, 2018, the Honorable Kirtan Khalsa, United States Magistrate Judge for the District of New Mexico, issued the Order Setting Conditions of Release, filed January 25, 2018 (Doc. 12)("Order"), in which she placed Plata Hernandez in the custody of La Pasada Halfway House ("La Pasada"). See Order at 2. Plata Hernandez filed a motion on August 24, 2018, seeking to modify the Order. See Motion to Modify Conditions of Release at 1, filed August 24, 2018 (Doc. 18)("First Motion"). After Magistrate Judge Khalsa orally denied Plata Hernandez' First Motion, see Transcript of Hearing at 10:17-22 (taken October 4, 2018), filed October 23, 2018 (Doc. 31)("Oct. 4 Tr."), Plata Hernandez filed the Motion, see Motion at 1.

### 1. First Motion.

Plata Hernandez requests that Magistrate Judge Khalsa modify his conditions of release, because Plata Hernandez is waiting for an appeal of his determination status, he has stayed at La

Pasada and adhered to its rules, and his desire to remain in the United States reduces the likelihood that he will flee. <u>See</u> First Motion at 1; First Motion ¶ 2-3, at 1. He asks that Magistrate Judge Khalsa release him to Plata, who has agreed to serve as a third-party custodian. <u>See</u> First Motion ¶ 5-6, at 2.

2.     **<u>First Response</u>.**

The United States filed the Response to Defendant's Motion to Modify Conditions of Release (Doc. 18), filed September 28, 2018 (Doc. 24). The United States argues that no facts have changed to warrant Plata Hernandez' release to his mother. <u>See</u> First Response at 3-4. According to the United States, Plata Hernandez lacks legal status in the United States, and he was previously deported and reentered. <u>See</u> First Response at 2. Further, the United States contends that Plata Hernandez has a weaker defense to his reentry charge than he did when charged, because a judge refused to reopen Plata Hernandez' removal proceedings, so without a reversal of the judge's decision, Plata Hernandez will be removed. <u>See</u> First Response at 2-3. The United States notes that Plata Hernandez has been arrested at least four times, including for driving under the influence, aggravated driving under the influence, possession of a controlled substance, child abuse, negligent use of a deadly weapon, aggravated assault against a household member, retaliation against a witness, intimidation, bribery, false imprisonment, and resisting/obstructing a police officer. <u>See</u> First Response at 3. According to the United States, Plata Hernandez has also failed to appear on multiple occasions. <u>See</u> First Response at 3. The United States contends that Plata Hernandez should be detained on his pending charges. <u>See</u> First Response at 3.

3.     **October 23, 2018, Hearing**.

Magistrate Judge Khalsa held a hearing on October 4, 2018.  <u>See</u> Oct. 4 Tr. at 1.  Plata Hernandez argued that what had changed between the Order and the hearing was that he found a "suitable third party custodian."  Oct. 4 Tr. at 3:9 (Acton).  <u>See</u> <u>id</u>. at 3:7-9 (Acton).  Further, Plata Hernandez noted that he has done well at La Pasada.  <u>See</u> Oct. 4 Tr. at 3:16-18 (Acton).  Plata Hernandez explained that he had been in the United States legally, had been convicted and had been subsequently deported, and, while his conviction has been overturned, his legal status has not been reestablished.  <u>See</u> Oct. 4 Tr. at 3:19-25 (Acton).  According to Plata Hernandez, an immigration attorney is working on his immigration case.  <u>See</u> Oct. 4 Tr. at 4:1-7 (Acton).  Plata Hernandez contended that his residence at La Pasada already allows him to move within the County of Bernalillo, New Mexico, that he hopes to remain within the country, and that his only crime would be illegally residing within the United States, which he will be doing regardless to whom Magistrate Judge Khalsa appoints custody.  <u>See</u> Oct. 4 Tr. at 4:17-8 (Acton).

The United States reiterated its position that the facts remain unchanged.  <u>See</u> Oct. 4 Tr. at 5:24-25 (Kastrin).  The United States argued that, if residing successfully at La Pasada justifies Plata Hernandez' release, "every compliant person on conditions would therefore have grounds to . . . be released."  Oct. 4 Tr. at 6:6-7 (Kastrin).  According to the United States, Plata's presence has not previously prevented Plata Hernandez' crimes and Plata Hernandez has a violent criminal history, which includes violence against household members.  <u>See</u> Oct. 4 Tr. at 6:10-22 (Kastrin).  Further, the United States expressed concerns about Plata Hernandez' drinking then driving and about Plata's ability to control such actions.  <u>See</u> Oct. 4 Tr. at 6:23-7:8 (Kastrin).  Finally,

according to the United States, that Plata Hernandez lost in immigration court increases his flight risk. See Oct. 4 Tr. at 7:9-17 (Kastrin).

Magistrate Judge Khalsa inquired whether the United States Probation Office ("USPO") had addressed Plata Hernandez' substance abuse problems. See Oct. 4 Tr. at 7:22-23 (Khalsa). USPO responded that Plata Hernandez is in treatment. See Oct. 4 Tr. at 7:24-8:3 (Probation Officer Duarte). Magistrate Judge Khalsa indicated that, at La Pasada, Plata Hernandez had no access to a vehicle. See Oct. 4 Tr. at 8:11-12 (Khalsa). Plata Hernandez explained that his last conviction for driving under the influence was twelve years earlier, see Oct. 4 Tr. at 8:16 (Acton), but the United States corrected that Plata Hernandez had been convicted "less than two years ago," see Oct 4 Tr. at 9:12 (Kastrin). Magistrate Judge Khalsa orally denied Plata Hernandez' motion, because the flight risk remains, and he has a history of substance abuse and behavior "that puts other people at risk." Oct 4 Tr. at 10:14-15 (Khalsa).

### 4.    **Motion.**

Plata Hernandez argues that his crime, illegal reentry, poses no threat to the community. See Motion at 4. Plata Hernandez contends that Magistrate Judge Khalsa focused on his drinking and driving, but his aggravated drinking under the influence conviction in 2016 resulted after he refused testing. See Motion at 4. Plata Hernandez admits that he had a drinking-under-the-influence conviction from 1999 and an "open container" conviction in 2006. Motion at 4. As support for his arguments, Plata Hernandez cites United States v. Dickson, No. 17-MR-0119-RJA, 2017 U.S. Dist. LEXIS 137122 (W.D.N.Y. Aug. 25, 2017)(Arcara, J.), in which the Honorable Richard J. Arcara, United States District Judge for the Western District of New York, placed the defendant, who drank more frequently and more heavily than Plata Hernandez, in his mother's

custody.  See Motion at 4-5.  Plata Hernandez indicates that, while residing with his mother, he would remain under the USPO's supervision and that he still would be under special conditions restricting his consumption of alcohol.  See Motion at 5-6.  Plata Hernandez avers that residing at La Pasada is a "significant restriction in his liberty interest," Motion at 6, and his appeal in his immigration case may last another year, see Motion at 6.

      **5.**     **Response.**

The United States filed the United States' Response to Defendant's Motion to Modify Conditions of Release or Amend Order Denying Motion to Modify Conditions of Release (Doc. 27), filed October 22, 2018 (Doc. 30)("Response").  The United States repeats its arguments from the First Response.  See Response at 3.  The United States avers that the information that Plata Hernandez cites "does not have a 'material bearing' on whether any conditions exist that would reasonably assure appearance at future proceedings or the safety of any other person and the community."  Response at 2.

      **6.**     **Hearing.**

Plata Hernandez explained the Motion's background: initially, Plata Hernandez hoped to be put in third-party custody, but the proposed custodian was an alleged victim, and he has now identified a suitable third-party custodian, his mother.  See Transcript of Hearing 3:24-4:8 (taken October 25, 2018)(Acton)("Tr."); [1] id. at 6:9-12.  According to Plata Hernandez, Plata Hernandez' family and home are in New Mexico.  See Tr. at 4:10-15 (Acton).  Plata Hernandez notes that he has been volunteering at a soup kitchen for "a little over a year."  Tr. at 4:15-17 (Acton).  According

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

to him, the conviction that led to his deportation has been set aside, and he is seeking, through his immigration case, to regain his legal immigration status, because he has "no disqualifying felonies." Tr. at 4:25-6:1 (Acton). <u>See</u> Tr. at 4:18-5:2 (Acton). If he wins his case, which is on appeal, he notes, his legal immigration status will apply retroactively, and the United States will not be able to prove his reentry charge. Tr. at 5:9-15 (Acton); <u>id</u>. at 5:17-19 (Acton). Plata Hernandez repeated his concerns from the Motion that Magistrate Judge Khalsa should not have considered his driving under the influence convictions. <u>See</u> Tr. at 7:22-8:9 (Acton). Plata Hernandez averred that 18 U.S.C. § 3142(g), which lists the factors for a court to consider in

determining pretrial detention,[2] is relevant when 18 U.S.C. § 3142(f) applies,[3] but that § 3142(f)

is not relevant to his case.  <u>See</u> Tr. at 8:19-9:17 (Acton).  Further, Plata Hernandez noted that he

---

[2]Section 3142(g) provides:

(g) **Factors to be considered.** -- The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

[3]Section 3142 (f) states:

**(f) Detention hearing.** -- The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community --

> **(1)** upon motion of the attorney for the Government, in a case that involves --
>
>> **(A)** a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;
>>
>> **(B)** an offense for which the maximum sentence is life imprisonment or death;
>>
>> **(C)** an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46;
>>
>> **(D)** any felony if such person has been convicted of two or more offenses described in subparagraphs (A) through (C) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (A) through (C) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; or
>>
>> **(E)** any felony that is not otherwise a crime of violence that involves a minor victim or that involves the possession or use of a firearm or destructive device (as those terms are defined in section 921), or any other dangerous weapon, or involves a failure to register under section 2250 of title 18, United States Code; or
>
> **(2)** upon motion of the attorney for the Government or upon the judicial officer's own motion, in a case that involves --
>
>> **(A)** a serious risk that such person will flee; or
>>
>> **(B)** a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.

The hearing shall be held immediately upon the person's first appearance before

considered arguing that the Bail Reform Act of 1984, 18 U.S.C. §§ 3141-50, is unconstitutional as applied to him, although he had not taken that position at the hearing's beginning. See Tr. at 9:17-10:5 (Acton). Plata Hernandez cited United States v. Salerno, 481 U.S. 739, 747 (1987), arguing that, in that case, the Supreme Court of the United States upheld the Bail Reform Act in face of a challenge arguing that preventive detention violates due process under the Fifth Amendment to the Constitution of the United States and notes that the Bail Reform Act focuses narrowly on "extremely serious offenses." Tr. at 11:8 (Acton). See Tr. at 10:9-11:9 (Acton). Plata Hernandez argued that United States v. Salerno suggests that "what matters is what the instant offense is." Tr.

---

the judicial officer unless that person, or the attorney for the Government, seeks a continuance. Except for good cause, a continuance on motion of such person may not exceed five days (not including any intermediate Saturday, Sunday, or legal holiday), and a continuance on motion of the attorney for the Government may not exceed three days (not including any intermediate Saturday, Sunday, or legal holiday). During a continuance, such person shall be detained, and the judicial officer, on motion of the attorney for the Government or sua sponte, may order that, while in custody, a person who appears to be a narcotics addict receive a medical examination to determine whether such person is an addict. At the hearing, such person has the right to be represented by counsel, and, if financially unable to obtain adequate representation, to have counsel appointed. The person shall be afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise. The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing. The facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence. The person may be detained pending completion of the hearing. The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142.

at 11:22-23 (Acton). According to Plata Hernandez, he was arrested for a "regulatory offense," Tr. at 12:2 (Acton), which does not "implicate . . . the public safety," Tr. at 12:3-4 (Acton). Plata Hernandez stated:

> It seems like if we're talking about looking back at some prior offense that in itself yes created a safety concern if we're looking back at that and using this situation as an . . . excuse to keep somebody off the streets that it's that kind of a situation where we're just trying . . . preventive detention.

Tr. at 8:2-9 (Acton). Plata Hernandez noted that his prior convictions are relatively old and because several convictions emerged from one incident, the United States' Response misrepresents his danger to the community. See Tr. at 14:4-16 (Acton). Regarding the flight risk, according to Plata Hernandez, he has proven that he is not a flight risk, because he has some freedom to "move about" from La Pasada, and he has not tried to flee. Tr. at 12:8 (Acton). Further, Plata Hernandez indicates that his goal is to remain in the United States, to be with his family, which fleeing will not achieve. See Tr. at 12:12-19 (Acton).

The United States responded that Plata Hernandez has "numerous failures to appear where bench warrants" were issued, has reentered the United States, and has previous driving under the influence convictions. Tr. at 16:7-17 (Weiss). According to the United States, no change of circumstances warrants modifying Magistrate Judge Khalsa's order, see Tr. at 15:12-18 (Weiss), although Plata Hernandez reiterated that finding an appropriate third-party custodian was a change in circumstances, see Tr. at 16:23-25 (Acton). Plata Hernandez rejected that the domestic violence convictions, from over a decade earlier, provides sufficient grounds to deny releasing him to his mother, see Tr. at 17:9-18:9 (Acton), and reiterated that the Court should not consider his criminal history, see Tr. at 18:6-23 (Acton).

The Court stated that Plata Hernandez represents a danger to the community and a flight risk. <u>See</u> Tr. at 18:24-19:1. Further, the Court indicated that it could look at criminal history and that Magistrate Judge Khalsa's conditions are acceptable. <u>See</u> Tr. at 19:3-19 (Court). Plata Hernandez responded by making clear his objection to the conditions on constitutional grounds, <u>see</u> Tr. at 20:13-18, and the Court indicated that it did not see the condition as unconstitutional, <u>see</u> Tr. at 20:19-20 (Court). The Court stated, "I barely am comfortable with the current stat[us of] him being at the hallway [house] given that he just doesn't' have any [legal status] in the country. [If] the Government makes a motion and wants to appeal that[,] we'll deal with that at that time." Tr. at 19:19-24 (Court).

## LAW REGARDING SUBSTANTIVE DUE-PROCESS CLAIMS

The Fourteenth Amendment to the Constitution of the United States' Due Process Clause provides that "no State shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. In general, state actors may be held liable under § 1983 only for their own affirmative acts that violate a plaintiff's due-process rights and not for third parties' acts. <u>See</u> <u>Robbins v. Oklahoma</u>, 519 F.3d 1242, 1251 (10th Cir. 2008)(citing <u>DeShaney v. Winnebago Cty. Dep't of Soc. Servs.</u>, 489 U.S. 189, 197 (1989)). "[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty and property of its citizens against invasion by private actors." <u>DeShaney v. Winnebago Cty. Dep't of Soc. Servs.</u>, 489 U.S. at 195. The Due Process Clause is not a guarantee of a minimal level of safety and security. <u>See</u> <u>DeShaney v. Winnebago Cty. Dep't of Soc. Servs.</u>, 489 U.S. at 195.

1.    **Exceptions to the General Rule.**

There are, however, two exceptions to this general rule.  The first exception -- the special-relationship doctrine -- arises when the state has a custodial relationship with the victim, which triggers an affirmative duty to provide protection to that individual.  See Christiansen v. City of Tulsa, 332 F.3d 1270, 1280 (10th Cir. 2003); Graham v. Indep. Sch. Dist. No. 1-89, 22 F.3d 991, 994-95 (10th Cir. 1994).  The second exception -- the danger-creation theory -- provides that a state may also be liable for an individual's safety "only when 'a state actor affirmatively acts to create, or increases a plaintiff's vulnerability to, or danger from private violence.'"  Robbins v. Oklahoma, 519 F.3d at 1251 (quoting Currier v. Doran, 242 F.3d 905, 923 (10th Cir. 2001)).  "If either the special-relationship or danger-creation exception applies, the conduct of the state actor must go beyond negligence to the point of 'shocking the conscience.'"  Glover v. Gartman, 899 F. Supp. 2d 1115, 1135 (D.N.M. 2012)(Browning, J.)(citing Johnson ex rel. Estate of Cano v. Holmes, 455 F.3d 1133, 1142 (10th Cir. 2006)("The shocks the conscience standard applies to both types of suits.")).

2.    **Special-Relationship Exception.**

The first exception to the general principle that a state's negligent failure to protect an individual cannot trigger liability under the due-process clause is the special-relationship doctrine. A plaintiff must show that they were involuntarily committed to state custody to establish a duty to protect under the special-relationship doctrine.  See Liebson v. N.M. Corr. Dep't, 73 F.3d 274, 276 (10th Cir. 1996).  "A special relationship exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual (e.g.

when the individual is a prisoner or involuntarily committed mental patient)." Uhlrig v. Harder, 64 F.3d 567, 572 (10th Cir. 1995).

**3.** **Danger-Creation Exception.**

The Due Process Clause protects against "deliberately wrongful government decisions rather than merely negligent government conduct." Uhlrig v. Harder, 64 F.3d at 573. The danger-creation exception to this rule applies only when "a state actor affirmatively acts to create, or increases a plaintiff's vulnerability to, or danger from private violence." Currier v. Doran, 242 F.3d at 923 (10th Cir. 2001). See Estate of B.I.C. v. Gillen, 702 F.3d 1182, 1187 (10th Cir. 2012)("[S]tate officials can be liable for the acts of private parties where those officials created the very danger that caused the harm."). Under a danger-creation theory, there is no § 1983 liability absent "an intent to harm" or "an intent to place a person unreasonably at risk of harm." Uhlrig v. Harder, 64 F.3d at 573. A plaintiff must show "sufficient[] 'affirmative conduct on the part of the state in placing the plaintiff in danger.'" Estate of B.I.C. v. Gillen, 702 F.3d at 1187 (quoting Gray v. Univ. Colo. Hosp. Auth., 672 F.3d 909, 916 (10th Cir. 2012)). To state a prima-facie case, the plaintiff must show that his or her danger-creation claim for due-process violations meets a six-part test: (i) the state and individual actors must have created the danger or increased plaintiff's vulnerability to the danger in some way; (ii) the plaintiff must be a member of a limited and specifically definable group; (iii) the defendant's conduct must put the plaintiff at substantial risk of serious, immediate, and proximate harm; (iv) the risk must be obvious and known; and (v) the defendant must have acted recklessly in conscious disregard of that risk. See Peña v. Greffet, 922 F. Supp. 2d 1187, 1227 (D.N.M. 2013)(Browning, J.)(citing Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist., 511 F.3d 1114, 1126 (10th Cir. 2008)).

In determining whether the danger-creation exception applies, the United States Court of Appeals for the Tenth Circuit has focused on the deliberateness of the conduct in relation to the caused harm. See Christiansen v. City of Tulsa, 332 F.3d at 1281. The defendant must recognize the unreasonableness of the risk of the conduct and act "with an intent to place a person unreasonably at risk." Medina v. City & Cty. of Denver, 960 F.2d 1493, 1496 (10th Cir. 1992). The intent to place a person unreasonably at risk is present where the defendant is "aware of a known or obvious risk" creating a high probability that serious harm will follow, and the defendant nonetheless proceeds with a "conscious and unreasonable disregard of the consequences." Medina v. City & Cty. of Denver, 960 F.2d at 1496 (citing Archuleta v. McShan, 896 F.2d 495, 499 & n.8 (10th Cir. 1990)).

        **4.**        **What Shocks the Conscience.**

A government actor's official conduct intended to injure in a way that cannot reasonably be justified by any government interest most likely shocks the conscience. See Cty. of Sacramento v. Lewis, 523 U.S. 833, 849 (1998)("[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level."). "[A] plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." Camuglia v. City of Albuquerque, 448 F.3d 1214, 1222 (10th Cir. 2006)(internal quotation marks omitted)(quoting Moore v. Guthrie, 438 F.3d 1036, 1040 (10th Cir. 2006)). "The plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." Camuglia v. City of Albuquerque, 448 F.3d at 1222-23 (internal quotation marks omitted)(quoting Uhlrig v. Harder, 64 F.3d at 574).

Establishing these limits advances "three basic principles highlighted by the Supreme Court in evaluating substantive due process claims: (1) the need for restraint in defining their scope; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting upon public safety."

Camuglia v. City of Albuquerque, 448 F.3d at 1223 (quoting Uhlrig v. Harder, 64 F.3d at 574).

"Whether the conduct shocks the conscience is an objective test, based on the circumstances, rather than a subjective test based on the government actor's knowledge." Peña v. Greffet, 922 F. Supp. 2d at 1227 (citing James v. Chavez, 830 F. Supp. 2d 1208, 1276 (D.N.M. 2011)(Browning, J.)(concluding that the use of deadly force did not shock the conscience even if the suspect did not have an intent to harm the officer, because the officer "had sufficient facts before him to conclude that there was a threat of serious physical harm" and the "courts must evaluate a [government actor's] conduct objectively"), aff'd, 511 F. App'x 742 (10th Cir. 2013)).

In Martinez v. Uphoff, 265 F.3d 1130 (10th Cir. 2001), the widow of a corrections officer sued the director, deputy director, warden, and deputy wardens of the department of corrections, alleging that the defendants deliberately failed to ensure proper training and supervision of penitentiary personnel, failed to provide safe and adequate staffing, and failed to take corrective action to protect her husband, all of which resulted in him being killed during the escape of three inmates. See 265 F.3d at 1132. The district court found that the plaintiff failed to state a § 1983 claim for violation of the Due Process Clause under a danger-creation theory, because the defendants' actions were "not of such a magnitude that the Court is able to conclude they shock the conscience." 265 F.3d at 1134. The Tenth Circuit agreed with the district court's conclusion, stating: "[U]nder the circumstances of this case, inaction in the face of known dangers or risks is

not enough to satisfy the danger-creation theory's conscience shocking standard." 265 F.3d at 1135.

In <u>Schaefer v. Las Cruces Public School District</u>, 716 F. Supp. 2d 1052 (D.N.M. 2010)(Browning, J.), the plaintiffs alleged that the defendants -- the school district, superintendent, principal, and vice principal of a middle school -- violated the plaintiffs' substantive due-process rights when they did not take sufficient action to prevent a student at the school from "racking"[4] the plaintiffs' son. 716 F. Supp. 2d at 1072-73. The Court concluded that the defendants' conduct did not shock the conscience. <u>See</u> 716 F. Supp. 2d at 1074-75. The Court explained:

> Assuming the absolute worst from the Schaefers' alleged facts, the Defendants were aware of three instances of an unknown eighth-grade student racking various sixth-grade students within the span of a month, and failed to implement policies to improve hallway monitoring and stop this conduct from occurring in time to prevent [the plaintiffs' son] from falling victim to the same fate. Further, the Defendants indicated to the sixth graders that it had policies in place to punish individuals that assaulted other students but did not, in fact, have such policies.
>
> While such behavior may be worthy of remedy under tort law, and perhaps worthy of punishment in the form of punitive damages, the Court's conscience is not shocked . . . .
>
> Any number of actions by the Defendants might have remedied the problem, but the Court's conscience is not shocked by the Defendants' failure to consider or implement such a policy. Even if the Defendants knew that students frequently -- more than three times per month -- attacked other students in the halls

---

[4]The parties in <u>Schaefer v. Las Cruces Public School District</u> defined being "racked" as being "kicked and/or punched in the testicles." 716 F. Supp. 2d at 1059 n.2 (internal quotation marks omitted)(citing <u>Schaefer v. Las Cruces Pub. Sch. Dist.</u>, No. CIV 09-1119 JB/KBM, Defendants Las Cruces Public School District, Dante Thacker, and Daniel Gomez' Motion to Dismiss Plaintiffs' Complaint on the Basis of Qualified Immunity and Other Grounds at 2, filed November 25, 2009 (Doc. 4); <u>Schaefer v. Las Cruces Pub. Sch. Dist.</u>, No. CIV 09-1119 JB/KBM, Complaint for Damages ¶ 24, at 5, filed December 7, 2009 (Doc.6)).

and declined to implement safety measures to minimize that conduct, the Court is not convinced that it would rise to the level of shocking the conscience.

716 F. Supp. 2d at 1074-75.

## LAW REGARDING PROCEDURAL DUE PROCESS

The Fourteenth Amendment states: "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The Due Process Clause encompasses two distinct forms of protection: (i) procedural due process, which requires a state to employ fair procedures when depriving a person of a protected interest; and (ii) substantive due process, which guarantees that a state cannot deprive a person of a protected interest for certain reasons. See Reid v. Pautler, 36 F. Supp. 3d 1067, 1136 (D.N.M. 2014)(Browning, J.)(citing Cty. of Sacramento v. Lewis, 523 U.S. at 845-46). "Under either form of protection, however, a person must have a protected interest in either life, liberty, or property." Chavez-Rodriguez v. City of Santa Fe, No. CIV 07-0633, 2008 WL 5992271, at *6 (D.N.M. Oct. 9, 2008)(Browning, J.). The Tenth Circuit prescribes a two-step inquiry in determining whether an individual's procedural due-process rights were violated: (i) "Did the individual possess a protected property [or liberty] interest to which due process protection was applicable?"; and (ii) "Was the individual afforded an appropriate level of process?" Camuglia v. City of Albuquerque, 448 F.3d at 1219 (quoting Clark v. City of Draper, 168 F.3d 1185, 1189 (10th Cir. 1999)).

"[T]o determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the nature of the interest at stake." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 570-71 (1972). "'Liberty' and 'property' are broad and majestic terms. They are among the '(g)reat (constitutional) concepts . . . purposely left to gather meaning from experience.'" Bd. of Regents of State Colls. v. Roth, 408 U.S. at 571 (quoting National Mutual

Ins. Co. v. Tidewater Transfer Co., 337 U.S. 582, 646 (1949)(Frankfurter, J., dissenting)). The

Supreme Court has "made clear that the property interests protected by the procedural due process

clause extend well beyond actual ownership of real estate, chattels, or money. . . [T]he Court has

required due process protection for deprivations of liberty beyond the sort of formal constraints

imposed by the criminal process." Bd. of Regents of State Colls. v. Roth, 408 U.S. at 571-72.

"Yet, while the Court has eschewed rigid or formalistic limitations on the protection of procedural

due process, it has at the same time observed certain boundaries" for "the words 'liberty' and

'property' in the Due Process Clause of the Fourteenth Amendment must be given some meaning."

Bd. of Regents of State Colls. v. Roth, 408 U.S. at 572.

Regarding the meaning of the "liberty" guaranteed by the Fourteenth Amendment, the

Supreme Court has stated the following:

> Without a doubt, it denotes not merely freedom from bodily restraint but also the
> right of the individual to contract, to engage in any of the common occupations of
> life, to acquire useful knowledge, to marry, to establish a home and bring up
> children, to worship God according to the dictates of his own conscience, and
> generally to enjoy those privileges long recognized . . . as essential to the orderly
> pursuit of happiness of free men. In a Constitution for a free people, there can be
> no doubt that the meaning of "liberty" must be broad indeed.

Bd. of Regents of State Colls. v. Roth, 408 U.S. at 572.

"The Fourteenth Amendment's procedural protection of property is a safeguard of the

security of interests that a person has already acquired in specific benefits." Bd. of Regents of

State Colls. v. Roth, 408 U.S. at 576. These property interests, as already explained, clearly can

include "real estate, chattels, or money," but they "may take many forms." Bd. of Regents of State

Colls. v. Roth, 408 U.S. at 571-76.

Thus, the Court has held that a person receiving welfare benefits under statutory
and administrative standards defining eligibility for them has an interest in

continued receipt of those benefits that is safeguarded by procedural due process. Goldberg v. Kelly, 397 U.S. 254 . . . [(1970)]. See Flemming v. Nestor, 363 U.S. 603, 611 . . . [(1960)]. Similarly, in the area of employment, the Court has held that a public college professor dismissed from an office held under tenure provisions, Slochower v. Bd. of [Educ.], 350 U.S. 551 . . . [(1956)], and college professors and staff members dismissed during the terms of their contracts, Wieman v. Updegraff, 344 U.S. 183 . . . [(1952)], have interests in continued employment that are safeguarded by due process.

Bd. of Regents of State Colls. v. Roth, 408 U.S. at 576-77.

Based upon these decisions, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Bd. of Regents of State Colls. v. Roth, 408 U.S. at 577. "Such an interest arises not from the Due Process Clause of the Constitution itself, but is created by independent sources such as a state or federal statute, a municipal charter or ordinance, or an implied or express contract." Teigen v. Renfrow, 511 F.3d 1072, 1079 (10th Cir. 2007). See Paul v. Davis, 424 U.S. 693, 710 (1976)("[Liberty and property] interests attain . . . constitutional status by virtue of the fact that they have been initially recognized and protected by state law."). "Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Bd. of Regents of State Colls. v. Roth, 408 U.S. at 577. See Farthing v. City of Shawnee, 39 F.3d 1131, 1135 (10th Cir. 1994)("Rather, property interests, which are the subject of the present litigation, 'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. at 577)).

"[O]nce it is determined that the Due Process Clause applies, the question remains what process is due." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985)(citing Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at 542. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." Mathews v. Eldridge, 424 U.S. 319, 334 (1976). The Supreme Court has explained

the root requirement of the Due Process Clause as being that an individual be given an opportunity for a hearing before he is deprived of any significant property interest. This principle requires some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment.

. . . .

[T]he pretermination hearing, though necessary, need not be elaborate. We have pointed out that [t]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings. In general, something less than a full evidentiary hearing is sufficient prior to adverse administrative action.

Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at 542, 545 (footnote omitted).

The United States Court of Appeals for the Second Circuit has stated:

The Supreme Court . . . explained that procedural due process is a flexible standard that can vary in different circumstances depending on "'the private interest that will be affected by the official action'" as compared to "the Government's asserted interest, 'including the function involved' and the burdens the Government would face in providing greater process." Hamdi v. Rumsfeld, 542 U.S. 507, [529] . . . (2004)(quoting Mathews v. Eldridge, 424 U.S. at 335 . . .). A court must carefully balance these competing concerns, analyzing "'the risk of an erroneous deprivation' of the private interest if the process were reduced and the 'probable value, if any, of additional or substitute safeguards.'" Id. (quoting Mathews v. Eldridge, 424 U.S. at 335 . . .).

United States v. Abuhamra, 389 F.3d 309, 318 (2d Cir. 2004). The hearing required depends on: (i) the nature of the private interest at stake; (ii) the risk of erroneous deprivation given the procedures already guaranteed, and whether additional procedural safeguards would prove valuable; and (iii) the government's interest and the burdens that additional procedures might impose. See Mathews v. Eldridge, 424 U.S. at 335. For example, "[w]here . . . the state must act quickly, a meaningful postdeprivation hearing is adequate." Clark v. City of Draper, 168 F.3d at 1189. See Spielman v. Hildebrand, 873 F.2d 1377, 1385 (10th Cir. 1989)(concluding that removal of a child from parents' custody requires predeprivation hearing "except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.").

The Court has previously considered procedural due process violations several times. For example, in A.M. through Youngers v. New Mexico Department of Health, No. CIV 13-0692 JB/WPL, 2015 WL 13668431 (D.N.M. Dec. 7, 2015)(Browning, J.), the Court concluded that the New Mexico Department of Health violated due process when it afforded a woman with developmental disabilities no process before depriving her of medical care, conditions of reasonable care, safety, and nonrestrictive confinement, because it afforded her no process for deprivation. See 2015 WL 13668431, at *37-43. The Court has also concluded that a tenured city employee was not denied due process when the city fired him, because the city afforded him a hearing. See Salazar v. City of Albuquerque, 776 F. Supp. 2d 1217, 1239 (D.N.M. 2011)(Browning, J.)("A citizen is entitled to process and is not necessarily guaranteed a win."). See also Duprey v. Twelfth Judicial Dist. Court, 760 F. Supp. 2d 1180, 1215 (D.N.M. 2009)(Browning, J.)(denying a due process claims where a state employee "got her opportunity to

be heard at a complex grievance hearing, with an attorney and with an opportunity to question witnesses, and make opening and closing arguments to a panel of decision-makers."); Camuglia v. City of Albuquerque, 375 F. Supp. 2d 1299, 1308-09 (D.N.M. 2005)(Browning, J.) aff'd, Camuglia v. City of Albuquerque, 448 F.3d at 1220-21 ("[I]t cannot be denied that the City, acting through its inspectors, may close a restaurant to protect the health of patrons and workers without first providing a hearing to the restaurant owner.").

## LAW REGARDING ILLEGAL REENTRY

The crime of entering the United States after deportation, in violation of 8 U.S.C. § 1326(a)(1) and (2), has four elements: (i) the defendant was an alien at the time he or she was found in the United States as alleged in the indictment; (ii) the defendant had been deported or removed previously from the United States; (iii) thereafter, the defendant intentionally entered the United States and the defendant was found in the United States; and (iv) the defendant had not received the consent of the appropriate authority to apply for readmission to the United States since the time of his or her previous deportation. See 8 U.S.C. § 1326(a)(1), (2); Tenth Circuit Pattern Jury Instructions Criminal 2.05, at 81 (2005)(modified).[5] "[T]he legal test for determining whether

---

[5]In United States v. Gutierrez-Castro, No. CR 10-2072 JB, 2011 WL 3503321(D.N.M. Aug. 6, 2011)(Browning, J.), the Court noted that the Tenth Circuit's decision in United States v. Sierra-Ledesma, 645 F.3d 1213 (10th Cir. 2011), counseled the Court to modify the Tenth Circuit's Pattern Jury Instruction for illegal reentry:

> The Court has modified the uniform jury instructions of the United States Court of Appeals for the Tenth Circuit by adding the word "intentionally." And because it does not make sense to talk about the defendant being intentionally "found," the Court has made "entered" and "was found" conjunctive rather than disjunctive. The Court believes that these changes are needed to comply with the Tenth Circuit's recent opinion in United States v. Sierra-Ledesma.

2011 WL 3503321, at *1 n.1.

a defendant is found in the United States references the federal government's knowledge, actual or constructive, and not the knowledge of any particular individual within the federal government, such as the ICE agents who happened to be stationed in Albuquerque in 2011." United States v. Olivas-Perea, 297 F. Supp. 3d 1191, 1210 (D.N.M. 2017)(Browning, J.)(citing United States v. Villarreal-Ortiz, 553 F.3d 1326, 1330 (10th Cir. 2009); United States v. Rosales-Garay, 283 F.3d 1200, 1203 (10th Cir. 2002)).

Section 1326 of Title 8 of the United States Code describes a crime of general intent and not one of specific intent. See United States v. Hernandez-Hernandez, 519 F.3d 1236, 1239 (10th Cir. 2008); United States v. Martinez-Morel, 118 F.3d 710, 713 (10th Cir. 1997). To secure a conviction, the United States must show only that the defendant's act, i.e., his or her entry or presence in the United States, was intentional. See United States v. Hernandez-Hernandez, 519 F.3d at 1239; United States v. Martinez-Morel, 118 F.3d 710, 713 (10th Cir. 1997). As the Tenth Circuit has stated, "the only intent the government must prove 'is the general intent to do the prohibited act, to-wit enter.'" United States v. Martinez-Morel, 118 F.3d at 712 (internal quotations omitted)(quoting United States v. Miranda-Enriquez, 842 F.2d 1211, 1212 (10th Cir. 1988)). See United States v. Sierra-Ledesma, 645 F.3d at 1221 ("As our discussion makes clear, we have long held that to secure a conviction under Section 1326's 'found in' provision, the Government must prove the defendant acted only with the 'intent to do the act of entering the country.'" (internal quotation marks omitted)(quoting United States v. Hernandez-Hernandez, 519 F.3d at 1239)). "'[T]he intent to do the act of entering the country' . . . will suffice to support a conviction under Section 1326's provision." United States v. Hernandez-Hernandez, 519 F.3d at 1230 (quoting United States v. Martinez-Morel, 118 F.3d at 717). The United States need not

prove that the defendant had an intent to break the law -- whether characterized as specific intent or general criminal intent.  See United States v. Miranda-Enriquez, 842 F.2d at 1212-13.

In United States v. Martinez-Morel, the Tenth Circuit held that documentary and testimonial evidence of the defendant's belief that he was not deported was not relevant, and thus affirmed a district court's exclusion of such evidence.  See 118 F.3d at 713-14.  The Tenth Circuit held that "the defendant's belief about whether he was deported is not 'of consequence to the determination of the action.'"  118 F.3d at 713 (citing Fed. R. Evid. 401).  That a defendant was unaware of his illegal status in the United States or that he was unaware of his prior deportation is therefore not a defense to the crime of illegal reentry.

In United States v. Sierra-Ledesma, the Tenth Circuit held:

> [T]he district court correctly refused to instruct the jury it must find Defendant possessed any intent as to the alienage, deportation, or authorization elements of Section 1326.  But, our precedent dictates [the district court] did err in refusing to instruct the jury that the Government must prove Defendant acted with the limited "intent to do the act of entering the country."

645 F.3d at 1222 (citing United States v. Martinez-Morel, 118 F.3d at 717; United States v. Hernandez-Hernandez, 519 F.3d at 1239).  The Tenth Circuit noted that it has "long held that to secure a conviction under Section 1326's 'found in' provision, the Government must prove the defendant acted only with 'the intent to do the act of entering the country.'"  645 F.3d at 1221 (internal quotation marks)(quoting United States v. Hernandez-Hernandez, 519 F.3d at 1239).  It stated: "Neither the Government nor Defendant have provided any persuasive reason to reconsider that longstanding conclusion."  645 F.3d at 1221-22.  The Tenth Circuit concluded: "The district court should have made clear to the jury that the Government must prove beyond a reasonable

doubt that Defendant reentered the United States with the intent to do so in order to find him guilty of Section 1326's 'found in' offense."  645 F.3d at 1223.

Moreover, a defendant's good-faith belief that he was entitled to enter the United States is not a defense.  See United States v. Miranda-Enriquez, 842 F.2d at 1213.  Other United States Courts of Appeals addressing this question have reached the same interpretation of 8 U.S.C. § 1326.  See, e.g., United States v. Champegnie, 925 F.2d 54, 55 (2d Cir. 1991)(per curiam)("[A] good faith or mistake defense does not exist under Section 1326."); United States v. Espinoza-Leon, 873 F.2d 743, 746 (4th Cir. 1989)(concluding that only general intent is required for a conviction under 8 U.S.C. § 1326 and that mistaken belief that defendant was allowed to re-enter country was thus not grounds for acquittal); United States v. Pena-Cabanillas, 394 F.2d 785, 790 (9th Cir. 1968)(same), abrogated on other grounds by United States v. Smith-Baltiher, 424 F.3d 913, 920 (9th Cir. 2005).  For some time, the opposite result prevailed in the United States Court of Appeals for the Seventh Circuit.  See United States v. Anton, 683 F.2d 1011, 1014-17 (7th Cir. 1982)(holding that intent to reenter the United States without permission was required to violate 8 U.S.C. § 1326).  In 2001, however, the Seventh Circuit overruled United States v. Anton and brought Seventh Circuit caselaw in line with the other circuits.  See United States v. Carlos-Colmenares, 253 F.3d 276, 278 (7th Cir. 2001).

Additionally, an alien who unlawfully reenters the United States is subject to criminal liability "regardless of the underlying motivation for such illegal entry."  United States v. Hernandez-Baide, 392 F.3d 1153, 1158 (10th Cir. 2004), judgment vacated by 544 U.S. 1015 (2005), opinion reinstated by 146 F. App'x 302 (10th Cir. 2005)(citing United States v. Martinez-

Morel, 118 F.3d at 715-16). As a result, the Tenth Circuit has held that a defendant's reason for

reentering is not an element of § 1326:

> [Section] 1326(a) is a regulatory measure with no express mens rea element or
> Congressional intent to include a mens rea element to be proven by the government
> for conviction. "Our determination is consistent with the Supreme Court's
> conclusion that regulatory statutes, silent with respect to mens rea, "impose a form
> of strict liability," and an inference "Congress did not intend to require proof of
> mens rea to establish an offense."

United States v. Hernandez-Baide, 392 F.3d at 1158 (quoting United States v. Martinez-Morel,

118 F.3d at 715-17; and citing Staples v. United States, 511 U.S. 600, 606 (1994); United States

v. Gutierrez-Gonzalez, 184 F.3d 1160, 1165 (10th Cir. 1999)). Accord United States v.

Hernandez-Hernandez, 519 F.3d at 1240.

The Court has previously granted a motion in limine in which the United States sought to

exclude from an illegal reentry case evidence of the defendant's state of mind, including "whether

he knew he had been deported, his reasons for coming back to the United States, whether he was

aware that he entered the United States illegally, and his beliefs about whether he was authorized

to reenter the United States." United States v. Gutierrez-Castro, No. CR 10-2072 JB, 2011 WL

3503321, at *4 (D.N.M. Aug. 6, 2011)(Browning J.). In light of the Tenth Circuit's recent opinion

in United States v. Sierra-Ledesma, in which it addressed 8 U.S.C. § 1326's required mental state,

and the United States' position that United States v. Sierra-Ledesma did not change the law in this

area, the Court concluded that the only effect United States v. Sierra-Ledesma had is that there is

some level on intent required, and that the defendant's mental state is thus not wholly irrelevant:

> At the hearing, the United States represented that it did not believe United
> States v. Sierra-Ledesma affected its motion in limine. United States v. Sierra-
> Ledesma has not changed the Tenth Circuit's precedent which held that, to secure
> a conviction under Section 1326's "found in" provision, the United States must

prove the defendant acted only with the intent to do the act of entering the country. See 645 F.3d at 1221-23.

At the same time, United States v. Sierra-Ledesma does not appear to have changed Tenth Circuit law that the defendant's reasons for returning, motive, and beliefs about the law are irrelevant, so the Court largely agrees with the United States that United States v. Sierra-Ledesma does not affect its motion in limine. The only sense in [which] it has any effect is that the defendant's mental state is not completely irrelevant. The United States must still prove the defendant's general intent to enter the United States. At the hearing, the parties discussed a new case from the Supreme Court . . . . The parties did not, however, direct the Court's attention to which case they were discussing, and the Court has not located a recent Supreme Court case on this subject. For purposes of this motion, the Court uses United States v. Sierra-Ledesma as the latest word on this subject.

2011 WL 3503321, at *4. The Court noted that "the Court may not be able to preclude all evidence of Gutierrez-Castro's mental state," but that "the range of permissible evidence is narrow." 2011 WL 3503321, at *4. The Court excluded under rules 401 and 402 "[a]ll evidence, proffers, or statements made by Gutierrez-Castro relating to his motives, beliefs about deportation, or reasons for returning," stating that said evidence is "not relevant to the determination of his guilt," and allowed him to offer "only evidence that he did not intend to enter the United States." 2011 WL 3503321, at *4. The Court ordered:

The Court prohibits Defendant Salvador De Jesus Gutierrez-Castro from mentioning or putting forth in any manner in the jury's presence evidence: (i) that Gutierrez-Castro was not aware that he entered the United States illegally; (ii) that Gutierrez-Castro was under the mistaken belief that he was authorized to enter the United States; (iii) that Gutierrez-Castro was not aware of his prior deportation when he entered the United States; or (iv) that Gutierrez-Castro returned for a reason.

2011 WL 3503321, at *4.

## LAW REGARDING PRETRIAL DETENTION

Pursuant to the Bail Reform Act of 1984, a court may detain a defendant pending trial only after a hearing, held pursuant to 18 U.S.C. § 3142(f), and upon a finding "that no condition or

combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). At such a hearing, the United States bears the burden of proving risk of flight by a preponderance of the evidence, or the burden of proving dangerousness by clear-and-convincing evidence. See 18 U.S.C. § 3142(f); United States v. Cisneros, 328 F.3d 610, 616 (10th Cir. 2003). "The rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f)(2). See United States v. Hernandez, 778 F. Supp. 2d 1211, 1219-28 (D.N.M. 2011)(Browning, J.)(holding that the Confrontation Clause of the Sixth Amendment to the Constitution of the United States did not apply to the defendant's pre-trial detention hearing). To determine whether pretrial detention is warranted, the judicial officer must consider the statutory factors that 18 U.S.C. § 3142(g) lists:

> (g) **Factors to be considered.** -- The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning

>> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

>> (2) the weight of the evidence against the person;

>> (3) the history and characteristics of the person, including

>>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

>>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial,

sentencing, appeal, or completion of sentence for an offense under
Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community
that would be posed by the person's release. In considering the conditions
of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this
section, the judicial officer may upon his own motion, or shall upon the
motion of the Government, conduct an inquiry into the source of the
property to be designated for potential forfeiture or offered as collateral to
secure a bond, and shall decline to accept the designation, or the use as
collateral, of property that, because of its source, will not reasonably assure
the appearance of the person as required.

18 U.S.C. § 3142(g).

When a defendant is charged with certain crimes, however, a presumption arises that the

defendant is a flight risk and a danger to the community. See 18 U.S.C. § 3142(e)(3); United

States v. Villapudua-Quintero, 308 F. App'x 272, 273 (10th Cir. 2009)(unpublished)[6](recognizing

that 18 U.S.C. § 3142(e) establishes a rebuttable presumption favoring detention for, among other

defendants, certain alleged drug offenders). 18 U.S.C. § 3142(e)(3)(A) provides that a

presumption of detention arises when "there is probable cause to believe that the person

committed" certain drug offenses, specifically "an offense for which a maximum term of

imprisonment of ten years or more is prescribed in the Controlled Substances Act, the Controlled

---

[6]United States v. Villapudua-Quintero is an unpublished Tenth Circuit opinion, but the
Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is
persuasive in the case before it. See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are
not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In
this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished
opinions is not favored. . . . However, if an unpublished opinion . . . has persuasive value with
respect to a material issue in a case and would assist the court in its disposition, we allow a citation
to that decision." United States v. Austin, 426 F.3d 1266 (10th Cir. 2005). The Court concludes
that United States v. Villapudua-Quintero, United States v. Hudak, 77 F. App'x 489 (10th Cir.
2003), United States v. Cos, 198 F. App'x 727 (10th Cir. 2006)(unpublished), and United States
v. Pickel, 500 F. App'x 771 (10th Cir. 2012), have persuasive value with respect to a material
issue, and will assist the Court in its preparation of this Memorandum Opinion and Order.

Substances Import and Export Act, or chapter 705 of title 46." 18 U.S.C. § 3142(e)(3)(A). The Tenth Circuit has explained that "[t]he grand jury indictment is sufficient to establish the finding of probable cause that defendant committed a federal drug offense with a maximum prison term of ten years or more." United States v. Silva, 7 F.3d 1046, 1046 (10th Cir. 1993). Accord United States v. Holguin, 791 F. Supp. 2d 1082, 1088 (D.N.M. 2011)(Browning, J.). "Once the presumption is invoked, the burden of production shifts to the defendant." United States v. Holguin, 791 F. Supp. 2d at 1087 (internal quotation marks omitted)(quoting United States v. Stricklin, 932 F.2d 1353, 1354-55 (10th Cir. 1991)). "The defendant's burden of production is not heavy, but some evidence must be produced." United States v. Baker, No. CR 17-2556 JB, 2018 WL 4915828, at *12 (D.N.M. Oct. 9, 2018)(Browning, J.)(internal quotation marks omitted)(quoting United States v. Villapudua-Quintero, 308 F. App'x at 273). "The burden of persuasion regarding risk-of-flight and danger to the community always remains with the government." United States v. Baker, 2018 WL 4915828, at *14 (internal quotation marks omitted)(quoting United States v. Villapudua-Quintero, 308 F. App'x at 273). "The Court has previously noted: 'The rebuttable presumption in drug-trafficking cases is statutory, and arises out of Congress' concern that individuals involved in drug trafficking often have foreign contacts and the ability to leave the country, and incentives to remain active in the drug trade.'" United States v. Solorio, No. CR 12-2375 JB, 2012 WL 6632760, at *16 (D.N.M. Nov. 27, 2012)(Browning, J.)(quoting United States v. Disher, 650 F. Supp. 2d 1131, 1136 (D.N.M. 2009)(Browning, J.)). See United States v. Vencomo-Reyes, 2011 WL 6013546, at *9 (concluding that being an alien in possession of a firearm is not a "crime of violence" under 18 U.S.C. § 3156(a)(4)(B) (quoting 18 U.S.C. §3156(a)(4)(B))).

To determine whether there are conditions that will reasonably assure the defendant's appearance and the community's safety, a court must consider: (i) the charged crime's the nature and circumstances; (ii) the weight of the evidence against the defendant; (iii) the defendant's history and characteristics, including family ties, employment, financial resources, community ties, drug or alcohol abuse history, and past conduct; and (iv) the nature and seriousness of the danger to the community or to an individual that release would pose. <u>See</u> 18 U.S.C. § 3142(g). "Should the defendant satisfy his or her burden of production under 18 U.S.C. § 3142(f), the United States must then show by a preponderance of the evidence that the defendant presents a risk of flight, or by clear-and-convincing evidence that the defendant presents a danger to the community." <u>United States v. Holguin</u>, 791 F. Supp. 2d at 1087 (citing <u>United States v. Mercedes</u>, 254 F.3d 433, 436 (2d Cir. 2001); <u>United States v. Stricklin</u>, 932 F.2d at 1354-55 ("[T]he burden of persuasion regarding risk-of-flight and danger to the community always remains with the government.")). <u>See</u> <u>United States v. Vencomo-Reyes</u>, No. CR 11-2563 JB, 2011 WL 6013546, at *10 (D.N.M. Nov. 28, 2011)(Browning, J.)("The Court determines that the existence of an ICE detainer 'weighs heavily in the risk of flight analysis.'" (quoting <u>United States v. Lozano-Miranda</u>, No. 09-20005, 2009 WL 113407, at *3 (D. Kan. Jan.15, 2009)(Waxse, M.J.))). Notably, however, even if the defendant meets his or her burden of production under 18 U.S.C. § 3142(f), "the presumption remains a factor for consideration by the district court in determining whether to release or detain." <u>United States v. Stricklin</u>, 932 F.2d at 1355. <u>Accord</u> <u>United States v. Mercedes</u>, 254 F.3d at 436; <u>United States v. Ramos</u>, No. CR 15-3940 JB, 2016 WL 9021831, at *13-14 (D.N.M. Dec. 30, 2016)(Browning, J.).

It violates due process to punish a pretrial detainee before a lawful conviction.  See United States v. Salerno, 481 U.S. at 747 n.4 (recognizing that there is a "point at which detention in a particular case might become excessively prolonged, and therefore punitive in relation to Congress' regulatory goal").  The Tenth Circuit has held that detention of a criminal defendant pending trial violates due process when the detention is excessively prolonged and is not regulatory, but punitive.  See, e.g., Peoples v. CCA Det. Ctrs., 422 F.3d 1090, 1106 (10th Cir. 2005), opinion vacated in part on other grounds on reh'g en banc, 449 F.3d 1097 (10th Cir. 2006); United States v. Hudak, 77 F. App'x 489, 489 (10th Cir. 2003)(unpublished)("Detention of a criminal defendant pending trial does not violate a defendant's due process rights under the Fifth Amendment, so long as the confinement does not amount to punishment."); United States v. Cos, 198 F. App'x 727, 732 (10th Cir. 2006)(unpublished)(stating that "due process may require a release from pretrial detention or, at a minimum, a fresh proceeding at which more is required of the government than is mandated by section 3142." (quoting United States v. Accetturo, 783 F.2d 382, 388 (3d Cir. 1986))).  To determine whether a defendant's detention implicates due process, courts look to "1) the length of detention; 2) the extent of the prosecution's responsibility for the delay of trial; and 3) the strength of the evidence upon which the detention was based."  United States v. Cos, 198 F. App'x at 732.

**LAW REGARDING THE DISTRICT COURT'S STANDARD OF REVIEW OF A MAGISTRATE JUDGE'S DETENTION ORDER OR RELEASE ORDER**

Section 3145(a) of Title 18 of the United States Code provides that a "court having original jurisdiction over the offense" may review a Magistrate Judge's detention order or release order. 18 U.S.C. § 3145(a)-(b).  "The standard of review for the district court's review of a Magistrate Judge's detention or release order under § 3145(a) is de novo."  United States v. Cisneros, 328

F.3d at 616 n.1. "When the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts de novo and must make an independent determination of the proper pretrial detention or conditions for release." United States v. Rueben, 974 F.2d 580, 585-86 (5th Cir. 1992). See United States v. Maull, 773 F.2d 1479, 1481 (8th Cir. 1985)(stating that a district court's review of a Magistrate Judge's order setting bond is de novo); United States v. Ramos, 2016 WL 9021831, at *15. A "§ 3145 motion to reconsider release is not the appropriate procedural vehicle by which to assert [an] Eighth Amendment [to the Constitution of the United States] challenge . . . . The Tenth Circuit has made clear that a 'prisoner who challenges the conditions of his confinement must do so through a civil rights action' -- i.e., either a Bivens or a § 1983 action." United States v. Loera, No. CR 13-1876 JB, 2017 WL 3098257, at *36 (D.N.M. June 22, 2017)(Browning, J.)(quoting Palma-Salazar v. Davis, 677 F.3d 1031, 1035 (10th Cir. 2012), and citing United States v. Garcia, 470 F.3d 1001, 1003 (10th Cir. 2006); Boyce v. Ashcroft, 251 F.3d 911, 918 (10th Cir. 2001)). The Tenth Circuit has recognized an exception "to the general rule that federal prisoners can challenge their conditions of confinement only by filing a separate civil rights action," United States v. Loera, 2017 WL 3098257, at *38, when a defendant argues that "the conditions on release prevent him from assisting his counsel in his defense." United States v. Loera, 2017 WL 3098257, at *38 (internal quotation marks omitted)(quoting United States v. Garcia, 470 F.3d at 1003).

## ANALYSIS

"The standard of review for the district court's review of a Magistrate Judge's detention or release order under § 3145(a) is de novo." United States v. Cisneros, 328 F.3d at 616 n.1. Conducting a de novo review, the Court agrees with Magistrate Judge Khalsa that, although Plata

Hernandez need be only either a flight risk or a danger to the community, Plata Hernandez is both

a flight risk and a danger to the community.  Plata Hernandez does not have a legal immigration

status, has a history of driving-under-the-influence convictions, has a history of violence against

household members, and has no employment or consistent residence in New Mexico.  All of these

factors counsel toward keeping custody with La Pasada, where he will be under closer scrutiny,

without a vehicle, and without access to individuals in his household.  The Court does not see a

condition or a combination of conditions that reduce these risks to acceptable levels.  If the Court

were writing on a clean slate, rather than on Plata Hernandez' appeal, the Court would not release

Plata Hernandez from custody.

## I.     THE COURT WILL CONSIDER 18 U.S.C. § 3142(G)'S FACTORS IN DETERMINING CONDITIONS ON RELEASE UNDER 18 U.S.C. § 3142(C).

Preliminarily, the Court disagrees with Plata Hernandez' assertions about § 3142(g)'s

relationship to § 3142(c).  Section 3142(c) provides:

> **(c) Release on conditions. -- (1)** If the judicial officer determines that the release described in subsection (b) of this section will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community, such judicial officer shall order the pretrial release of the person --
>
> > **(A)** subject to the condition that the person not commit a Federal, State, or local crime during the period of release and subject to the condition that the person cooperate in the collection of a DNA sample from the person if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000 (42 U.S.C. 14135a); and
> >
> > **(B)** subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community, which may include the condition that the person --
> >
> > > **(i)** remain in the custody of a designated person, who agrees to assume supervision and to report any violation of a release condition to the court, if the designated person is able reasonably to assure the

judicial officer that the person will appear as required and will not pose a danger to the safety of any other person or the community;

**(ii)** maintain employment, or, if unemployed, actively seek employment;

**(iii)** maintain or commence an educational program;

**(iv)** abide by specified restrictions on personal associations, place of abode, or travel;

**(v)** avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense;

**(vi)** report on a regular basis to a designated law enforcement agency, pretrial services agency, or other agency;

**(vii)** comply with a specified curfew;

**(viii)** refrain from possessing a firearm, destructive device, or other dangerous weapon;

**(ix)** refrain from excessive use of alcohol, or any use of a narcotic drug or other controlled substance, as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802), without a prescription by a licensed medical practitioner;

**(x)** undergo available medical, psychological, or psychiatric treatment, including treatment for drug or alcohol dependency, and remain in a specified institution if required for that purpose;

**(xi)** execute an agreement to forfeit upon failing to appear as required, property of a sufficient unencumbered value, including money, as is reasonably necessary to assure the appearance of the person as required, and shall provide the court with proof of ownership and the value of the property along with information regarding existing encumbrances as the judicial office may require;

**(xii)** execute a bail bond with solvent sureties; who will execute an agreement to forfeit in such amount as is reasonably necessary to assure appearance of the person as required and shall provide the court with information regarding the value of the assets and liabilities of the surety if other than an approved surety and the nature and extent of encumbrances against the surety's property; such surety shall have a net worth which shall have sufficient unencumbered value to pay the amount of the bail bond;

**(xiii)** return to custody for specified hours following release for employment, schooling, or other limited purposes; and

**(xiv)** satisfy any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community.

In any case that involves a minor victim under section 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425 of this title, or a failure to register offense under section 2250 of this title, any release order shall contain, at a minimum, a condition of electronic monitoring and each of the conditions specified at subparagraphs (iv), (v), (vi), (vii), and (viii).

**(2)** The judicial officer may not impose a financial condition that results in the pretrial detention of the person.

**(3)** The judicial officer may at any time amend the order to impose additional or different conditions of release.

18 U.S.C. § 3142. Section § 3142(g) states:

(g) **Factors to be considered.** -- The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial,

sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

The Court concludes that the best interpretation of § 3142 involves considering § 3142(g)'s factors when determining conditions on release under § 3142(c). Section 3142(c)(B) requires that a judicial officer determine whether there is a "condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(B). Section 3142(g) enumerates the factors to consider when determining "whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(g). Section 3142(g), thus, lists the factors for making the determination in § 3142(c)(B), and so § 3142(c)(B) should be read considering § 3142(g).

The Court disagrees with Plata Hernandez' argument that § 3142(g) applies only when § 3142(f) applies. See Tr. at 8:19-9:17 (Acton). Section 3142(f) provides: "The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). The language "there are conditions of release" in § 3142(g) might suggest that the judicial officer is determining, not which

conditions will assure the alleged offender's appearance and the public safety, but whether there are or are not conditions that will assure those ends. 18 U.S.C. § 3142(f). If the language is read as about determining if a condition exists, § 3142(g) seems to apply only to § 3142(f), which also asks whether there are conditions that assure the alleged offender's appearance and the public safety. This interpretation, however, ignores the language in § 3142(c)(B). Further, § 3142(f) applies if conditions on release under § 3142(c) will not adequately assure the alleged offender's appearance and the public safety. See 18 U.S.C. § 3142(f). If a judicial officer determines, under § 3142(f), that conditions exist that assure these ends, the judicial officer returns to § 3142(c) to impose conditions on release, because § 3142(f) provides the requirements for the hearing only. See 18 U.S.C. § 3142(f). Having reached the determination that § 3142(c) conditions on release are adequate, the judicial officer should design those conditions on release accounting for the flight risk and danger to the community that the judicial officer determined under § 3142(f), using the § 3142(g) factors. It would be odd if, having determined that conditions on release would assure the alleged offender's appearance and the public safety, the judicial officer returned to § 3142(c) and was forced to design conditions on release that ignored the § 3142(g) factors that the officer considered in assessing the alleged offender's flight risk and danger to the community. If § 3142(c) required such an evaluation, judicial officers might routinely issue conditions on release that underestimated the alleged offender's flight risk and danger to the community. Accordingly, the evaluation of the alleged offender's flight risk and danger to the community should be the same between § 3142(c) and § 3142(f), and a judicial officer should consider the § 3142(g) factors when deciding conditions on release under § 3142(c).

Courts, including the Tenth Circuit, consider § 3142(g)'s factors when determining conditions on release under § 3142(c). In an appeal of a condition of pre-trial release, the Tenth Circuit cites § 3142(g) for the factors relevant to its analysis of the condition. See United States v. Pickel, 500 F. App'x 771, 771, 773 (10th Cir. 2012)(unpublished)("Based upon our independent review of the court's findings and the record, we conclude that the district court properly considered the requisite factors for determining the conditions of relief, see 18 U.S.C. § 3142(g) . . . ."). The United States Court of Appeals for the Sixth Circuit has explained:

> The Bail Reform Act permits a court to release a defendant on the condition that he "avoid all contact with an alleged victim of the crime [or] with a potential witness who may testify concerning the offense" if that condition is "the least restrictive further condition, or combination of conditions, that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B)(v). The Act directs a judicial officer to consider four factors: (1) the nature and circumstances of the offense; (2) the weight of the evidence; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community. 18 U.S.C. § 3142(g)(1)-(4).

United States v. Vasilakos, 508 F.3d 401, 410-11 (6th Cir. 2007). The Second Circuit has similarly stated:

> Under the statute, judicial officers determining whether detention or conditions of release are appropriate must consider "the available information concerning" the nature of the offense charged, the evidence against the defendant, personal history and characteristics of the defendant (including mental condition and litigation history), and the nature and seriousness of the danger presented by the defendant. [18 U.S.C. §§ 3142(f)(2), 3142(g)].

United States v. Martin-Trigona, 767 F.2d 35, 38 (2d Cir. 1985).

## II. **UNDERLINED STATES V. SALERNO DOES NOT PREVENT THE COURT FROM CONSIDERING PLATA HERNANDEZ' PREVIOUS CONVICTIONS.**

Plata Hernandez argues that it is unconstitutional for the Court to consider his criminal history in defining the conditions on release. As support for his argument, Plata Hernandez quotes United States v. Salerno:

> The statute we upheld in Schall[v. Martin, 467 U.S. 254 (1984)] permitted pretrial detention of any juvenile arrested on any charge after a showing that the individual might commit some undefined further crimes. The Bail Reform Act, in contrast, narrowly focuses on a particularly acute problem in which the Government interests are overwhelming. The Act operates only on individuals who have been arrested for a specific category of extremely serious offenses. 18 U.S.C. § 3142(f). Congress specifically found that these individuals are far more likely to be responsible for dangerous acts in the community after arrest.

481 U.S. at 750. The Court disagrees with Plata Hernandez that its decision is unconstitutional.

In United States v. Salerno, the Supreme Court upheld the Bail Reform Act against a challenge contending that, as a punishment before trial, it violates substantive due process and, as attempting the "unattainable" task of predicting future dangerousness, it violates procedural due process. 481 U.S. at 751. Analyzing whether the United States had a "legitimate and compelling" reason to detain arrestees pretrial as a regulatory action, the Supreme Court determined that Congress has a compelling interest in preventing crime, particularly the "extremely serious offenses" for which the Bail Reform Act provides detention. 481 U.S. at 750. The Supreme Court notes: "The Act operates only on individuals who have been arrested for a specific category of extremely serious offenses. 18 U.S.C. § 3142(f). Congress specifically found that these individuals are far more likely to be responsible for dangerous acts in the community after arrest." 481 U.S. at 750. The Supreme Court continues that the Bail Reform Act does not embody "a scattershot attempt to incapacitate those who are merely suspected of these serious crimes." 481

U.S. at 750.  According to the Supreme Court, the Bail Reform Act requires probable cause that the arrestee committed the crime, and clear and convincing evidence that "no conditions of release can reasonably assure the safety of the community or any person."  481 U.S. at 750-51.  For the Supreme Court, the proof requirements heighten the United States' compelling interest, and, as such specifications for "circumstances under which detention will be permitted" exist, infringing individuals' liberty interests is justified.  481 U.S. at 750-51.  Finally, the Supreme Court rejected attacking the Bail Reform Act on a facial challenge, based on the difficulty of evaluating future dangerousness.  See 481 U.S. at 751-52.  Again, the Bail Reform Act's procedural safeguards provided the Supreme Court confidence in its effects.  See 481 U.S. at 751-52.  Detainees have rights to counsel, to testify, to present information and cross-examine witnesses; "statutorily enumerated factors" and a clear-and-convincing evidence standard limit the court's discretion; and a requirement for written findings of fact and an allowance for an immediate appeal provide mechanisms for oversight.  481 U.S. at 751-52.

Nowhere does the Supreme Court state what Plata Hernandez argues that the Supreme Court states -- that a district court cannot, in determining conditions on release or detention, consider an alleged offender's criminal history.  Section 3142(g) -- which enumerates the factors, including criminal history, for judicial officers to consider when determining pretrial conditions on release or detention -- existed in the Bail Reform Act when the Supreme Court considered the statute, and the Supreme Court did not address the section.  The Supreme Court said nothing about § 3142(g) or the consideration of criminal history being unconstitutional.

Undeniably, there is tension between the statements that Plata Hernandez quotes and the realities of the Bail Reform Act, given § 3142(g)'s factors.  The Supreme Court reasoned:

"Congress specifically found that these individuals are far more likely to be responsible for dangerous acts in the community after arrest."  United States v. Salerno, 481 U.S. at 750.  As Plata Hernandez would have it, this sentence suggests that it is the underlying offense that creates the potential for danger; it implies that the dangerousness analysis should focus on the charged offense's seriousness.  Nevertheless, § 3142(g) permits, and even encourages, courts to consider the alleged offender's history and characteristics.  The Supreme Court, thus, emphasized the seriousness of the offenses listed in § 3142(f) while simultaneously allowing courts to use widely varied information to assess dangerousness.  The decision enables a court to, for instance, detain a controlled-substance offender, because he has multiple driving-under-the-influence convictions, and to ignore or minimize in its risk calculus the danger, which supposedly justified the detention, that the offender's alleged narcotics crimes pose.

The Supreme Court relied on the Bail Reform Act's procedural safeguards to relieve some tension.  United States v. Salerno, 481 U.S. at 747-48.  By limiting the Bail Reform Act to "the most serious of crimes," requiring "a prompt detention hearing," and limiting "maximum length of pretrial detention," Congress, according to the Supreme Court, narrowed its interest in pretrial detention.  481 U.S. at 747-48.

Applying this reasoning to determining Plata Hernandez' conditions on release, the Court concludes that the existing conditions, designed considering Plata Hernandez' criminal history, are not unconstitutional.  It is the charged offense which brings individuals into the Bail Reform Act.  The enumerated offenses in § 3142(f) warrant assessing individuals' criminal history, among other factors, for determining if their dangerousness requires pretrial detention.  The only distinction between Plata Hernandez and a § 3142(f) defendant is degree.  Distinctions in degree do not

change a regulatory pretrial action to an impermissible punishment. That Plata Hernandez was charged with a federal offense warrants assessing his future dangerousness when considering pretrial conditions. Further, he had an individualized assessment, by a neutral-decision-maker, bounded by the factors listed in § 3142(g) and his presentation in court. He, in fact, received multiple hearings before judicial officers.

In the end, the Court recognizes that there is always tension between detention pretrial and the presumption of innocence that the Constitution's Due Process Clause protects. Once the law crosses that bright-line rule of no pretrial detention into the murky area of allowing some pretrial detention, the erosion of the presumption of innocence is a matter of degree. Americans are pragmatic, and the Bail Reform Act represents a bundle of compromises trying to address the two most serious concerns on release -- flight and danger -- with the cherished American value of the presumption of innocence. The Supreme Court has said that the Bail Reform Act is not unconstitutional on its face. It is not unconstitutional as applied specifically to Plata Hernandez. What is happening to Plata Hernandez in this case is no different than what happens to thousands of federal defendants very year in federal courts across the country. The pretrial services of the USPO provides a bail report, and a federal judge looks at the criminal hearing and other information in the bail report to determine the conditions of release. Plata Hernandez' as-applied challenge fails; a judge looked at the bail report and applied the relevant factors.

## III. BASED ON PLATA HERNANDEZ' CRIMINAL HISTORY AND IMMIGRATION STATUS, THE COURT CONCLUDES THAT HE IS A DANGER TO THE COMMUNITY.

Plata Hernandez argues that Magistrate Judge Khalsa should not have determined that, based on Plata Hernandez' driving under the influence convictions, Plata Hernandez represented

a danger to the community.  See Motion at 4; Tr. at 7:22-8:9 (Acton).  Plata Hernandez objects that he has succeeded at La Pasada and the crime underlying his conviction -- reentering the United States -- hurts no one.  See Motion at 4; First Motion ¶ 2-3, at 1.  The Court disagrees with Plata Hernandez' arguments and concludes that the United States has shown by clear-and-convincing evidence that he poses danger to the community.  The Court will address Plata Hernandez' arguments, although not in order.

First, Plata Hernandez' immigration status poses a danger on its own.  Allowing Plata Hernandez to reside with his mother "puts him back into society without any legal status." United States v. Min, No. PO 07-1199 JB, 2007 WL 5685126, at *5 (D.N.M. Nov. 21, 2007)(Browning, J.).  The Court has previously explained that releasing defendants without legal immigration status "is not consistent with Congress' views on the dangers of illegal immigration." United States v. Min, 2007 WL 5685126, at *5.

Plata Hernandez, like the defendant in United States v. Min, minimizes the severity of the crime of illegal reentry.  The political branches, however, have, in their wisdom, treated the crime as a serious crime in the United States Code.  It has a maximum sentence of two years, see 8 U.S.C. § 1326(a)(2), and reentry after deportation "for commission of three or more misdemeanors involving drugs, crimes against the person, or both, or a felony (other than an aggravated felony)," has a maximum sentence of ten years, 8 U.S.C. § 1326(b)(1).  In context, "assault by striking, beating, or wounding" has a maximum of one year, 18 U.S.C. § 113(a)(4), and "assault with a dangerous weapon, with intent to do bodily harm," has a maximum of ten years, 18 U.S.C. § 113(a)(4).  While Plata Hernandez labels illegal reentry a "regulatory crime" -- a crime that is blameworthy only because Congress prohibited it, see, e.g., John G. Malcolm, Morally Innocent,

Legally Guilty: The Case for Mens Rea Reform, 18 Federalist Soc'y Rev. 40, 42 (2017)("[Regulatory crimes] are malum prohibitum offenses because they are not inherently blameworthy . . . . Such conduct is prohibited -- and prosecutable -- only because a legislature or bureaucrat has said that it is."), regardless how it is classified, it remains a serious crime. Moreover, even if there are those who may be willing to minimize the crime when it involves people coming to the United States without a criminal history, there is broad agreement that the nation should keep out aliens who have, once before, committed dangerous and/or violent crimes in a prior time in the United States.

While an illegal immigration status is an atypical danger, remaining illegally in the United States continues an activity that Congress has criminalized. On a clean slate, the Court would detain Plata Hernandez. See Tr. at 19:19-22 (Court). According to Plata Hernandez, regardless whether he resides with his mother or with La Pasada, he will move through society while maintaining an illegal status. See Oct. 4 Tr. at 4:17-8 (Acton). The Court acknowledges that distinguishing between Plata Hernandez' illegal status while at Plata's house or at La Pasada is drawing a thin line, but, La Pasada's requirements at least impose some restrictions on Plata Hernandez.

Second, Plata Hernandez has a criminal history involving several driving-under-the-influence convictions and assault against household members. See Pretrial Services Report at 5-6. The Court can consider driving-under-the-influence convictions as evidence illustrating a defendant's danger to the community. See United States v. Chavez, No. CR 13-0960 JB, 2013 WL 4782216 at *1, *3 (D.N.M. Sept. 3, 2013)(Browning, J.)(concluding that the United States met its burden for showing detention by establishing that the defendant had five felony convictions,

including "battery upon a peace officer," and five driving-under-the-influence or driving-while-intoxicated convictions). Driving under substances' influence poses risks for those around the driver. As Magistrate Judge Khalsa noted, Plata Hernandez may have access to a vehicle while residing at Plata's home, unlike at La Pasada. See Oct. 4 Tr. at 8:11-12 (Khalsa). Further, Plata Hernandez has a history of assaulting those close to him. See Pretrial Services Report at 5. Plata Hernandez' history of violent crimes, see Pretrial Services Report at 5, counsels against releasing Plata Hernandez to his mother.

Finally, contrary to Plata Hernandez' arguments that he has succeeded at La Pasada, which has a strict regime and at which he has no vehicle, does not mean that his success will continue at his mother's, which lacks La Pasada's structure and at which he may access a vehicle. When the Court places defendants at La Pasada, the Court hopes that they will do well in La Pasada's structure. Halfway houses, like La Pasada, help defendants and mitigate dangers. That defendants succeed initially, however, does not mean that courts, which give custody to halfway houses, because they maintain rigid structures, should release the defendants to third-party custodians.

In sum, Plata Hernandez has not been a model alien in the United States. He has committed multiple acts of domestic violence and driving while intoxicated. These are dangerous crimes that degrade the safety of the community. In addition, he was deported and did not receive permission to return. The Court is concerned that he will disappear into America and recommit these crimes. The United States has shown, based on Plata Hernandez' criminal history, that Plata Hernandez is, by clear-and-convincing evidence, a danger to the community at large by his intoxicated driving and to people around with him with his violence. The Court would not, on a clean slate, go as far as Magistrate Judge Khalsa and release him at all. The Court does not believe that any conditions

of release, given his immigration status and his prior bad acts and convictions, reduce his risk to the community to an acceptable level.

The Court can confidently say, however, that Magistrate Judge Khalsa reduced his conditions of release to the least restrictive possible to minimize his risk of danger to the community by leaving him in the halfway house. As long as he lives there, he cannot drive, drink, abuse, or assault others.

## IV.    GIVEN PLATA HERNANDEZ' IMMIGRATION STATUS, PLATA HERNANDEZ PRESENTS A RISK OF FLIGHT.

The Court concludes that Plata Hernandez' ties to New Mexico do not overcome his flight risk. Plata Hernandez has a history of non-appearance. See Pretrial Services Report at 5. Additionally, when a defendant without legal immigration status moves between locations and has no financial connections to a location, the Court has deemed the defendant a flight risk. See United States v. Min, 2007 WL 5685126, at *5. Plata Hernandez avers that he has no interest in returning to Mexico; he has family ties to New Mexico; and he is waiting for his immigration appeal, because he desires to remain in the United States. See Tr. at 12:12-19 (Acton); id. at 12:12-19 (Acton); First Motion ¶ 2-3, at 1. Plata Hernandez, like Min, however, lacks employment connections to New Mexico or the United States, and, has not resided regularly in New Mexico. See United States v. Min, 2007 WL 5685126, at *5. ICE removed Plata Hernandez from Albuquerque to Mexico in 2007. See Pretrial Services Report at 2. Further, Plata Hernandez recently lost his United States immigration case, see First Response at 2-3, and, while he states that he is waiting for the appeal, see Tr. at 4:18-5:2 (Acton), the Mexican border is close. The Court understands that Plata Hernandez hopes to regain his legal immigration status, but, given his current situation,

the Court deems that the United States has shown by a preponderance of the evidence that Plata Hernandez is a flight risk.

At some point, Plata Hernandez may come to realize that the gig is up and that he cannot stay in the United States. That realization may come very quickly, if his appeal is denied. In that circumstance, he may go from trying to stay in the United States and trying to behave himself to disappearing -- either into the communities of America or back to Mexico -- to avoid the serious penalty that Congress has legislated. The United States has shown, by a preponderance of the evidence, based on Plata Hernandez' immigration status and lack of connections to New Mexico, that Plata Hernandez is a flight risk. The Court concludes that, given his lack of legal status in the United States, he would, if he were released to his mother's custody, eventually disappear into the United States or slip bail into Mexico. On a clean slate, the Court would find that no conditions or combination of conditions exists that would render his risk of flight to an acceptable level. The Court can confidently say that Magistrate Judge Khalsa has identified the least restrictive conditions of release.

## V.     UNITED STATES V. DICKSON IS DISTINGUISHABLE.

Plata Hernandez contends that United States v. Dickson supports releasing him to his mother's custody. The defendant, Levon Dickson, struggled with alcohol throughout his life, and was charged with, and had previous convictions for, narcotics offenses. See United States v. Dickson, 2017 U.S. Dist. LEXIS 1371122, at *7-8, *12. On the other hand, Dickson had strong ties to the community and had performed well during periods of supervision, and Judge Arcara released him to his mother's residence under strict conditions. See United States v. Dickson, 2017 U.S. Dist. LEXIS 1371122, at *9-10, *14-16.

United States v. Dickson presents only persuasive authority, and, when defendants have driving-under-the-influence convictions plus other convictions, the Court has required detention or given custody to La Pasada. United States v. Cameron, No. CR 12-3182 JB, 2013 WL 3271003 at *9 (D.N.M. June 14, 2013)(Browning, J.)(determining that a criminal history involving controlled substance use, transportation, and sale, and "numerous" driving-under-the-influence arrests supported pretrial detention). Cf. United States v. Romero, No. CR 12-1909 JB, 2012 WL 6632698, at *2, *18 (D.N.M. Dec. 4, 2012)(Browning, J.)(giving custody to La Pasada where the defendant had several driving-under-the-influence, and other criminal convictions, but was not a danger to the whole community, because, among other things, he acted violently only toward family members, and the defendant had strong ties to New Mexico).

Further, several factors distinguish Dickson from Plata Hernandez. One, Dickson was charged with narcotics offenses, and so conditions on release could mitigate the underlying offense's threatened danger, unlike the danger of residing illegally in the United States. Two, while Dickson's criminal history included "firearms-related misdemeanors," United States v. Dickson, 2017 U.S. Dist. LEXIS 1371122, at *10, he had no convictions for violence specifically against household members. Three, Dickson spent his life and had his family in Buffalo, New York, in the Western District of New York, where he would appear. See 2017 U.S. Dist. LEXIS 1371122, at *9-10. Plata Hernandez, although he has ties to New Mexico, is a Mexican citizen, who recently lost an United States immigration case, and Albuquerque is close to the Mexico border.

Accordingly, the Court agrees with Magistrate Judge Khalsa and denies Plata Hernandez' Motion.

**IT IS ORDERED** that the Defendant's Motion to Revoke or Amend Order Denying

Motion to Modify Conditions of Release, filed October 13, 2018 (Doc. 27), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

John C. Anderson
  United States Attorney
Norman Cairns
Kimberly A. Brawley
Holland S. Kastrin
Jack Burkhead
Jason Lloyd Wisecup
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Gregory M. Acton
Albuquerque, New Mexico

    *Attorney for the Defendant*